The opinion of the court was delivered by
Nicholls, C. J.
This case comes to us on appeal by the plaintiff from the action of the District Court in sustaining an exception of no cause of action filed by the defendant setting aside a writ of sequestration which had issued at appellant’s instance, and dismissing this •suit. Plaintiff had filed a petition and a supplemental petition.
The allegations of the first were as follows:'
“That the plaintiff, on the 26th of December, 1896, became the purchaser at sheriff’s sale at the suit of the State of Louisiana ex rel. P. Breazeale, District Attorney, et als. vs. Clifton Cannon, of the following described property situated in Avoyelles, namely:
“A certain tract of land and improvements thereon situated on Yellow Bayou in Avoyelles, containing three hundred and fifty-one and sixty-one one-hundredths acres, and being lot No. 3 of the partition between Lester Cannon and Clifton Cannon as per plat annexed to said act of partition recorded in alienation book PEP, folio 222.
“That of-this tract about three hundred acres are of woodland, upon which, at the time of its seizure, were valuable cypress brakes, for which said land was particularly valuable. That he has been informed by reliable parties, he believes it to be true, and, therefore, alleges that since the seizure of said property under which he *1252 bought it and during the sheriff’s possession thereof one Edward E.. Magee, who resides in said parish, running a saw-mill in the neighborhood of said property, had forcibly and unlawfully entered upon petitioner’s said land with a force of men, and in the short time of the sheriff’s possession thereof, which had been transferred to petitioner, had cut and removed much of petitioner’s most valuable timber, most of which timber is now lying on Yellow Bayou directly in front of petitioner’s said property, and some of which petitioner-is informed still lies on petitioner’s land. That he fears that said Magee would convert said timber into manufactured lumber, or that he would remove same from the jurisdiction of the court, or so mix it up with other property as to destroy its identity. . That petitioner is informed that said Magee had during the time above set forth cut about one thousand logs on his said property, which are still in his possession in Yellow Bayou on petitioner’s land in the neighborhood, thereof, which are worth twenty-five hundred dollars.
“ That his principal inducement for purchasing the aforesaid property was the timber thereon at the time of its seizure, and which petitioner had just reason to believe still existed at the time-of the sale. That it was only after the sale that he discovered the true condition of things. Petitioner avers that he has the right of possession and ownership of all the timber cut and on said land by said Magee, and now in his possession as aforesaid, and to a writ of sequestration to preserve said property during the.pendency of the-suit, or should said property be removed or destroyed by said defendant Magee, then petitioner is entitled to a judgment for the-estimated value of said timber or such deficiency as might be found.
“The premises considered he prays that a writ of sequestration issue directed to the sheriff, commanding him to sequester, seize, take into his possession and keep during the pendency of the-suit about one thousand cypress trees now in the possession of Edward F. Magee, in Yellow Bayou, in the parish of Avoyelles, or-on petitioner’s land, as above described, or in the neighborhood thereof; that Magee be cited to appear and answer; that the legal delays thereafter expiring his rights .of possession and ownership of said logs sequestered be recognized and enforced; should, however,, less quantity be found, or they all be removed before their seizure, then petitioner prays that Magee be condemned to pay petitioner- *1253 their estimated value, as alleged, at the rate of two dollars and a half per log.”
A writ of sequestration was ordered to and did issue as prayed for. In execution of this writ the sheriff sequestered “twenty (more or less) logs lying in the swamp and six hundred and twenty-three logs (more or less) lying in Yellow Bayou.”
The defendant on January 6, 1897, applied for and obtained the right to bond the said property. The record does not show whether this right was exercised or when so exercised.
On the 23d of January, 1897, plaintiff’s supplemental petition was ■filed.
In it plaintiff adopted and reiterated all the allegations of the •original petition and the prayer thereof. He then averred that the defendant Magee was further indebted to him in the further sum of five hundred dollars, making a total sum of three thousand, instead of twenty-five hundred dollars as originally claimed, because ■said Magee did further undercut, deaden and otherwise destroy a lot of standing timber on petitioner’s land described in the original petition to the extent of'five hundred dollars, for which said Magee is indebted to petitioner.
Adopting the prayer of the original petition he further prayed for citation on Magee and judgment against him for three thousand ■dollars, instead of twenty-five hundred dollars as originally asked for.
On the 3d of February defendant filed an exception of no cause of action, which having been sustained resulted in the judgment appealed from.
Appellant in his brief urges that “ viewing, his action in the light -of the allegations of his petition we have several causes of action. We have the allegation that during the short time of the sheriff’s possession under the writ of ft. fa. the defendant, Magee, took a force of armed men and forcibly and without legal right entered upon the land and cut and felled one thousand trees. That some of these trees are still on the land and claim is made to the whole of those found on and those found beyond the property. To those "trees two distinct causes of action exist. To those lying on the land from the fact alone of their being there, and to all from the fact that they were cut on the land, and a third cause of action is that embodied in the amended petition, which claims five hundred *1254 dollars from the undercutting and deadening of the trees standing. For two of the causes we contend plaintiff’s suit should be maintained independently of the question as to what is transferred by the sheriff’s deed. Independently of that question he has a certain and distinct right to the trees found on the land, and to a restitution for-the damage caused by the deadening of the trees still standing.’’ Defendant’s exception of no cause of action is directed at the.whole demand. We have to deal with it in its entirety; that is to say, w©must either entirely sustain or entirely reject it. We are not called on to analyze the petition to ascertain whether, if even sustained by proof, particular portions of the demand would not have forcedly to be rejected as not resting on a legal basis, and upon so finding to designate in our judgment what those portions are, and sustain defendant’s exception to that extent. If defendant had good cause to object to any particular part of plaintiff’s pleadings he should either have made special reference to that part and prayed for relief under an exception such as he has filed, or he should have made a direct motion to strike out, or he should reserve his objection tO' be urged on the trial by way of objection to the’introduction of evidence. If we find any portion of plaintiff’s petition able to withstand the made attack upon it through the exception, we will be forced to reverse the judgment appealed from and remand the cause.
Under plaintiff’s allegations he became the adjudicatee at sheriff’s sale under a fl. fa. of a tract of land which derived a great part-of its value from the cypress trees standing by the roots thereon at the time of the seizure. A portion of those trees so standing were cut down by a trespasser in the interval between the seizure and the sale, and the same were still upon the land which he purchased. Fearing that they were about to be removed without. shadow of right, he had them sequestered and claims ownership thereof — as against a trespasser. Under this statement of facts, the trees in question formed part of the land at the time of the seizure. Had they not been cut down as they were, they would have passed with the land to the purchaser at the judicial sale. The possession of the property passed from the owner of the property to the sheriff by the seizure. It went in its entirety as real estate into his hands. -Had there been crops standing by the roots at the time of the seizure,:, and had they become detached during the same, they would have-become mobilized and would have enured to the benefit of the. *1255 seizing creditor, as objects separate and distinct from the land of which it had formed part when seized. The subsequent purchaser of the land would have had no claim under the express provisions of the Code of Practice to the fruits and revenues produced by the thing seized, pending the seizure.
It must not be argued from this, however, that every physical detaching during the seizure, of objects forming part of the realty at the time of the seizure, has, as its legal effect, the mobilization of the things detached and of withdrawing them, ipso facto, from passing under the ownership of the subsequent purchaser of the land as forming part of the thing purchased by him. They might or might not so pass according to circumstances. The objects detached might be made the object of a separate sale by advertisement, or by being withdrawn from being included in the sale of the real estate by proper announcement. Trees standing by the roots on property at the time of its seizure, which are cut down by a trespasser, pending the same, are not to be classed “ fruits” or “ revenues” of the land. They are not necessarily mobilized b.y their detachment, any more than would be a building, or a portion of a building, on the property blown down by a storm pending the seizure. If the latter were still upon the property at the time of the judicial sale thereof, not having been specially withdrawn, nor made the subject of a special, separate adjudication, it would pass to the purchaser of the land as part of his purchase. Rogers vs. Gillinger, 30 Penn. State Reports, 188, 189; Leidy vs. Proctor, 97 Penn. State Reports, 492.
We need not complicate the situation in this particular case as it comes to us, by enlarging our inquiries as to what would be the rights of parties if the trees cut by the trespasser were no longer in esse reelaimable in kind, but had been removed from the property and disposed of by him, leaving as the sole recourse against him an action for damages, or as to whether the purchaser would not be-entitled, on ascertaining that the object purchased by him had had its value impaired by standing trees having been cut down during the seizure, to either refuse to comply with his bid, or insist upon a proportionate diminution of the price.
It is argued that if they had been removed, the action for their recovery would have been in the sheriff. The sheriff would unques-' tionably have been entitled to sue for their recovery had he been a.ble to trace them, but it by no means follows from this that after *1256 the sale and surrender of the main property to the purchaser, the latter would not have an independent right of action for the same purpose, if they had passed to him by the effect of the sale. A prominence is given to the right of action of the sheriff in the premises to which it is not entitled. Take the case of the seizure of a sugar plantation with improvements and stock thereon, and suppose that pending the seizure and advertisement of the property for sale, a portion of the mules should have been stolen and removed, as also portions of the machinery, and that the sheriff having discovered their whereabouts had instituted proceedings for their recovery, but before judgment the plantation had been sent to sale. Suppose that thereafter the objects removed should have been recovered and taken possession of by the sheriff. What would he have done with the mules or the machinery so recovered? Would he have turned them over to the seizing creditor, or had them sold as movables, or delivered them to the seized debtor, or would he have delivered them to the purchaser in order to place the thing purchased in the condition it should have been and would have been but for the tort committed. We think there can be no question as to the right of the purchaser to have had them delivered to himself. We are of the opinion that the purchaser would have been entitled to take them. We do not propose to enter into any elaborate discussion of the doctrine of “relation” in its connection with the subject of judicial seizures and judicial sales and make no further examination of the subject than is necessary for us to reach a conclusion as to whether plaintiff’s petition utterly failed to show a cause of action as defendant claims it does.
Should there be anything in the facts of this special case leading the defendant to suppose that he might come contingently under a double liability from claims which might be advanced by either the seizing creditor or the seized debtor, he can very easily protect himself by making them parties to this proceeding and- giving them the opportunity of contesting plaintiff’s demand, if any cause they may have for so doing. Le Blanc vs. Dashiell, 14 La. 274; Hazard vs. Agricultural Bank of Mississippi, 11 Rob. 326.
We think defendant’s contentionis wrong, and that the court erred in sustaining the exception.
Eor the reasons herein assigned, it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby *1257 annulled, avoided and reversed, and ifc is now ordered that the exception of no cause of action be and it is hereby overruled, the cause reinstated and remanded to the District Court for further proceedings according to law.